# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JAMIL SHTEIWI, | : | Case No. 3:16-cv-00105 |
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| NANCY A. BERRYHILL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

## DECISION AND ENTRY

### I.

Plaintiff Jamil Shteiwi began working when he was a teenager. He eventually owned, together with other family members, several chili restaurants. His work over the years required him to engage in frequent physical labor such as lifting, sweeping, mopping, and cooking. As he aged, his work took a toll on his physical health, as it inevitably tends to do. He developed ever-increasing back pain along with pain in his neck, shoulders, arms, elbows, and right wrist. He also suffers from depression, anxiety, and panic attacks due (at least in part) to financial problems with the family-owned restaurants. *See* Doc. #6, *PageID* #s 72-73.

Plaintiff eventually found that at age fifty three, after twenty-eight years of employment, his health problems had deteriorated to the point he could no longer work. He consequently applied to the Social Security Administration for Disability

Insurance Benefits. He asserted that he was eligible to receive benefits because, starting on September 1, 2012, he had been under one or more disabilities.

The gateway to Plaintiff's eligibility for benefits hinged on whether he was under a "disability" as defined by the Social Security Act. *See Rabbers v. Commissioner Social Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009); *see also* 42 U.S.C. § 423(a)(1)(E). The term "disability" refers to "any medically determinable physical or mental impairment" that precludes a social security applicant from performing a significant paid job—*i.e.*, "substantial gainful activity." 42 U.S.C. § 423(d)(1)(A); *see Bowen v, City of New York*, 476 U.S. 467, 469-70 (1986). A person is under a disability only when their physical or mental impairments are of such severity that they (1) cannot do their previous work, and (2) cannot, "considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration—mainly through the decision of Administrative Law Judge (ALJ) Gregory G. Kenyon—determined that Plaintiff was not under a disability and, consequently, was not eligible to receive Disability Insurance Benefits.

Plaintiff brings the present case challenging ALJ Kenyon's non-disability decision on the ground that he committed reversible error by failing to properly evaluate the opinions of Plaintiff's very long-term treating physician, Dr. Edward Kinkopf. Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner finds no error in the ALJ's

decision and contends that substantial evidence supports it. The Commissioner therefore asks the Court to affirm the ALJ's non-disability decision.

## II.

Before ALJ Kenyon issued his decision, he held a hearing during which Plaintiff testified. At that point in time, Plaintiff was fifty-three years old. He had been married for twenty-seven years. They have three adult-age children.

Plaintiff testified that he has suffered back pain since age seventeen. As he got older, his back pain increased. His worst pain is in his lower and upper back, his shoulders, and his elbows. His back pain feels sharp and is at its worst, it is an eight on a ten-point scale (ten representing the most intense pain). Treatment of his back pain has included prescribed medications and injections—up to eighteen injections from various treatment providers. His pain medications (Percocet and Ibuprofen) cause him to feel "[d]rowsy, sleepy…, lightheaded." (Doc. #6, *PageID* #91). He also has pain in both legs and knees. His knee pain is a nine on the ten-point scale. And, he has numbness in his fingers. *Id*. at 95.

Plaintiff has neck pain that feels sharp. He sometimes has trouble turning his head and usually has trouble looking up and down (75% of the time). His neck pain is an eight on the pain scale. He's also had tendonitis in his right elbow for a long time. There is swelling in his elbow joint and it is painful, making it very difficult and painful for him to lift anything. Injections have "helped for a limited time only." *Id*. at 85.

Plaintiff testified that he could barely walk due to his sharp, stabbing knee pain. In addition to injections, treatment of his knee pain has included physical therapy. He has swelling in his knees, and it feels to him "like water is in there." *Id*. at 80. He elevates his knees three to four hours a day. This also helps with his back problems.

Plaintiff has shoulder pain that extends into his arms. He has difficulty raising his arms above his head. The pain is sharp and will occur, he says, "when I'm just sitting down." *Id*. at 81. He's received injections that helped for about a year. He estimated his shoulder-pain level at about a six.

As to his mental health, Plaintiff has depression. He acknowledged that he had been hospitalized for suicidal thoughts. He still has suicidal thoughts about three times a week. Describing his depression, he testified, "I don't like to leave my room. I don't like to socialize with my friends. I don't like to go out with family, with the kids, with my friends. I wanted to be alone …." *Id*. at 82. His depression symptoms also include crying three or four times every day. And, he has difficulty concentrating. He recounted, "I cannot focus—if you tell me something, I just kind of drift away. My kids will ask me things. I say, well, you know I told you that. Then they say no. Then I say yes, I did say that …." *Id*. at 83. He always thinks about the past, his family members who are gone.

Plaintiff also has anxiety and panic attacks. When he has a panic attack, his heart rate "goes real fast. I start going back and forth in the room. I feel like I'm choked. I can't … breathe. And very upset, very angry." *Id*. at 84. His panic attacks

are brought on by his past experiences with "the family, the business, … [his] physical pain." *Id*. He treats panic attacks with medication (Ambien) to help him calm down.

Plaintiff told the ALJ that he is limited to lifting seven or eight pounds because of his shoulder and right-hand pain. His low-back pain limits him to sitting for about twenty minutes before he needs to stand. He can stand or walk for a total of twenty minutes before needing to sit.

Plaintiff testified that he has difficulties with personal care that requires him to bend over, such as putting on his socks. He has difficulty washing his back because he cannot reach it. He cannot do household chores; his wife does them. He used to have hobbies but has "no desire" to do them. *Id*. at 87. He no longer exercises. He spends an ordinary day in bed with his "leg elevated, knees elevated." *Id*. He spends about four to five hours a day in bed.

Plaintiff reported that Dr. Kinkopf has been his treating family doctor since he was seventeen years old. This is confirmed by a form Dr. Kinkopf filled out in October 2013. *Id*. at 488. Dr. Kinkopf listed Plaintiff's diagnoses as major depression and anxiety; lumbago and thoracic pain; degenerative joint disease of the right elbow, shoulder, and wrist; and, left-leg numbness. *Id*. He found Plaintiff's lumbar and thoracic pain was "worse with movement, bending, and standing." *Id*. He reported that Plaintiff had tenderness and decreased range of motion in his lumbar and thoracic spine.

Dr. Kinkopf estimated that in a competitive work situation, Plaintiff could walk one block, sit for ten minutes before needing to stand, stand for fifteen minutes before

5

needing to sit, sit for a total of two hours during an eight-hour workday, and sit/walk for a total of two hours in an eight-hour workday. *Id*. at 490-91. Dr. Kinkopf further estimated that Plaintiff could rarely lift less than ten pounds and could never lift heavier amounts of weight. He could occasionally look down or up, occasionally turn his head to the right or left, and occasionally hold his head in a static position. *Id*. In response to the question—"Does your patient need a job that permits shifting at will from sitting, standing or walking?—Dr. Kinkopf wrote, "cannot, must be able to lay [sic] down." *Id*. at 490. He would also need to take frequent, unscheduled breaks and would need to rest on average for thirty to sixty minutes. *Id*.

Dr. Kinkopf believed that Plaintiff's pain and other symptoms would be severe enough during a typical workday to interfere with the attention and concentration he needed to perform simple tasks. *Id*. at 489. He reported that Plaintiff's fingers get numb. He estimated that Plaintiff's ability to manipulate was limited to the following percentages of an eight-hour workday: either hand (gripping, turning, twisting objects)—ten percent; fingers (fine manipulation)—ten percent; and arms (reaching level or overhead)—five percent. *Id*. at 491.

Dr. Kinkopf opined that Plaintiff was incapable of low-stress jobs due to his major depression and anxiety. Overall, Plaintiff would likely to be absent from work as a result of his impairments or treatment more than four days per month. *Id*.

### III.

As indicated previously, it fell to ALJ Kenyon to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the

6

five well-known sequential steps described by the regulations. *See* 20 C.F.R. § 404.1520(a)(4); *see also Rabbers*, 582 F.3d at 652.

Moving through some initial findings, the ALJ reached steps two and three where he found that Plaintiff's severe impairments—"cervical, thoracic, and lumbosacral degenerative disc disease, degenerative joint disease of the bilateral knees and right shoulder, fibromyalgia, and major depressive and anxiety-related disorders"—did not automatically qualify him for benefits. (Doc. #6, *PageID* #s 54-58). At step four, the ALJ found that Plaintiff could still perform light work except he was limited to work requiring:[1]

> no more than occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs, no climbing of ladders and ropes, and scaffolds, no work around hazards such as unprotected heights or dangerous machinery, no more than occasional overhead reaching, and is also limited to work comprised of unskilled, simple, repetitive tasks with no more than occasional contact with co-workers and supervisors, no public contact, no jobs involving fast-paced production work or strict production quotas, and is limited to performing his jobs in a relatively static work environment in which there is very little, if any, change in the job duties or the work routine from one day to the next.

*Id*. at 58.

Plaintiff's limited abilities, according to ALJ Kenyon, prevented him from being able to perform his past work as a food services manager but did not prevent him from performing a significant number of available jobs, such routing clerk or mail

---

[1] The Social Security Administration refers to what a person can do as his or her "residual functional capacity." *See* 20 C.F.R. § 404.1545(a); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

7

clerk. *Id*. at 64. This meant that he was not under a disability and not entitled to benefits. *Id*.

The present review of ALJ Kenyon's decision determines whether he applied the correct legal standards and whether substantial evidence supports his findings. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). If he failed to apply the correct legal criteria, his decision may be fatally flawed even if the record contains substantial evidence supporting his findings. *Rabbers*, 582 F.3d at 651; *see Bowen*, 478 F.3d at 746; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004). Substantial evidence supports a finding when "a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance ...." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

## IV.

Plaintiff contends that the ALJ failed to properly apply the treating physician rule to the opinions of his long-term treating physician Dr. Kinkopf. Plaintiff also argues that even if the ALJ properly applied the treating physician rule, he erred by failing to weigh Dr. Kinkopf's opinions under the remaining factors required by the regulations, 20 C.F.R. §404.1527(c)(2)-(6). These errors, Plaintiff contends, leaves the ALJ's decision void of "good reasons" for placing little weight on Dr. Kinkopf's opinions.

8

The treating physician rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014).

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

An ALJ must provide "good reasons" for the weight he or she places upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. Substantial evidence must support the reasons provided by the ALJ. *Id.*

ALJ Kenyon addressed Dr. Kinkopf's opinions as follows:

> The medical source statement proffered by [Dr. Kinkopf], which, among other things, limited the claimant to an exceedingly

9

> narrow range of sedentary work with the need for frequent breaks, limited manipulation of objects, and opined that the claimant would have greater than four absences per month due to his impairments, is given little weight because it assesses limitations in manipulation which are not supported by medically-determinable impairment, it requires the elevation of the feet when so such directive is given elsewhere in the medical evidence and appear to be only a preference of the claimant, it is inconsistent with the claimant's normal ambulatory abilities, and it does not take into account the extent to which the claimant's normal ambulatory abilities, and it does not take into account the extent to which the claimant's symptoms would improve in the presence of appropriate treatment (Exh. 7F [*PageID* #s 488-91]).

(Doc. #6, *PageID* #62).

Elsewhere in his decision, ALJ Kenyon cited the Regulation (20 C.F.R. § 404.1527) and Social Security Ruling 96-2p, 1996 WL 374188 (July 2, 1996), that contain and describe the legal criteria under which ALJs must weigh medical sources' opinions, including treating sources' opinions. *See* Doc. #6, *PageID* #58. The ALJ, however, did not do so in connection with his evaluation of Dr. Kinkopf's opinions. This omission, while not itself an error, is problematic because the ALJ never described the treating physician rule when assessing Dr. Kinkopf's opinions (or anywhere in his decision). The ALJ's reasoning, therefore, must be carefully examined to see if he considered Dr. Kinkopf's opinions under the legal criteria mandated by the treating physician rule and by the remaining regulatory factors. *See* 20 C.F.R. § 404.1527(c)(2); *see also* Soc. Sec. R. 96-2p, 1996 WL 374188.

The ALJ erred by failing to weigh Dr. Kinkopf's opinions under the treating physician rule. Instead, the ALJ conflated the treating physician rule's legal criteria with the remaining regulatory factors. While the ALJ used the words "not supported"

at one point and "inconsistent with" at another point, the ALJ's reasoning fails to indicate whether he did this under the treating physician rule or under the factors of "supportability" and "consistency." This constitutes error. The Regulations, Rulings, and case law mandated such delineation when weighing this very long-term treating physician's opinions because "[i]n all cases, the treating physician's opinion is entitled to great deference, its non-controlling status notwithstanding." *Gentry*, 741 F.3d at 723 (citing *Rogers*, 486 F.3d at 242). Without such delineation, the ALJ weighed Dr. Kinkopf's opinion as if it were a non-treating physician's opinion, a violation of 20 C.F.R. §§ 404.1527(c)(2)-(6)—and, consequently, a failure to apply the correct legal criteria. *See Rogers*, 486 F.3d 242; *see also Gayheart*, 710 F.3d at 376 ("The source of the opinion … dictates the process by which the Commissioner accords it weight."). Said another way, the ALJ never appreciated that even if Dr. Kinkopf's opinions were not entitled to controlling weight, his unique position as a very long-term treating physician might still require a significant deference, thus requiring an application of the remaining regulatory factors, including "the length of the treatment relationship and the frequency of examination" and "the nature and extent of the treatment relationship." 20 C.F.R. § 404.1527(c)(2); *see Rogers*, 486 F.3d 242; *see* Soc. Sec. R. 96-2p, 1996 WL 374188, at *1 ("A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator."). The result of the ALJ's failure to apply the correct legal criteria to Dr. Kinkopf's opinions is that the ALJ's

decision is void of good reasons for rejecting this long-term—twenty-eight years—treating physician's opinions.

The Commissioner contends, by quoting several unpublished cases, that the ALJ is not required to discuss every factor in 20 C.F.R. § 404.1527(c) but only needs to include "good reasons" for the weight given to a treating source's opinions. The Commissioner observes that the ALJ's reasons may be sufficient even though brief, may be indirect but clear, and may be provided in an implicit manner. And, the Commissioner maintains, "The Sixth Circuit has acknowledged that even a one-sentence rejection of a treating source's opinion can be sufficient to satisfy 20 C.F.R. § 404.1527(c)(2)'s 'good reasons' requirement." (Doc. #10, *PageID* #622) (citing *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 651 (6th Cir. 2009)).

The Commissioner is correct as a general matter. The unpublished cases the Commissioner quotes from explain that the Regulations illuminate the significance of the "good reasons" requirement rather than require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). Plaintiff does not contend he is due a factor-by-factor analysis. He also "concedes that in many cases some of the … factors would not apply and need not be addressed by the ALJ." (Doc. #11, *PageID* #633). However, these and other similar observations in the cases the Commissioner quotes present different circumstances than the present case. Plaintiff was due some explanation in addition to the controlling-weight determination because of Dr. Kinkopf's multiple-decades-long treatment relationship with Plaintiff, because the ALJ placed "little," rather than controlling, weight on Dr.

Kinkopf's opinion, and because the record contains objective medical evidence tending to confirm Dr. Kinkopf's opinions. That analysis needed to discuss, at a minimum, the factors most applicable—particularly, the length and frequency of the treatment relationship as well as the nature and extent of the treatment relationship. *See* Soc. Sec. R. 96-2p, 1996 WL 384277 ("Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927."); *see also Rabbers*, 582 F.3d at 660. Surely, Dr. Kinkopf held an exceptionally well-informed longitudinal view of Plaintiff's health problems, unlike the comparatively less-informed state-agency physicians upon whom the ALJ relied. *See* 20 C.F.R. § 404.1527(c) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone ….").

Additionally, the Commissioner's reliance on *Allen*'s acceptance of an ALJ's one-sentence rejection of a treating source's opinions, 561 F.3d at 651, does not assist the Commissioner in the present case. *Allen* approved of the ALJ's analysis because although succinct, "it reaches several of the factors that an ALJ must consider when determining what weight to give a non-controlling opinion by a treating source, including: the length of the treatment relationship and the frequency of examination, 20 C.F.R. § 404.1527(d)(2)(i); the nature and extent of the treatment relationship, § 404.1527(d)(2)(ii); and the supportability of the opinion, § 404.1527(d)(3)." 561 F.3d

13

at 651.  The same cannot be said of the ALJ's analysis in the present case.  The ALJ in the instant case did not mention Dr. Kinkopf's very long-term treatment relationship with Plaintiff.  And here, unlike in *Allen*, the ALJ's rather perfunctory discussion of Dr. Kinkopf's opinion evidence does not apply the correct legal criteria (as explained above).

The Commissioner contends that Plaintiff's contentions fail because the ALJ cited substantial evidence that was inconsistent with Dr. Kinkopf's findings.  This contention overlooks the ALJ's failure to apply the correct legal criteria to Dr. Kinkopf's opinions.  As the Sixth Circuit has repeatedly instructed, "An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole v. Comm'r of Soc. Sec.,* 661 F.3d 931, 937 (6th Cir. 2011) (internal quotation marks and citation omitted); *see Gayheart*, 710 F.3d at 374; *Rabbers*, 582 F.3d at 651; *Bowen*, 478 F.3d at 746; *Wilson*, 378 F.3d at 546-47.  Consequently, neither the ALJ's nor the Commissioner's citations to substantial evidence alleviate his failure to apply the correct legal criteria to Dr. Kinkopf's opinions.  It must be further noted that the Commissioner does not argue harmless error.  Without the benefit of adversarial briefing regarding harmless error, venturing into this heavily evidence-dependent territory is unwarranted.

Plaintiff does not take issue with two of the ALJ's reasons for discounting Dr. Kinkopf's opinions.   He does not challenge the ALJ's finding that Dr. Kinkopf adopted limitations to Plaintiff's ability to manipulate objects with his hands when he

14

had no severe hand impairment. Plaintiff also does not challenge the ALJ's finding that there is no directive in the objective evidence that requires Plaintiff to elevate his feet, contrary to Dr. Kinkopf's belief that he needed to elevate his feet.

Lastly, one of the reasons the ALJ gives for the weight he placed on Dr. Kinkopf's opinions is fraught with problems. The ALJ discounted Dr. Kinkopf's opinions because he did not "taken into account the extent to which the claimant's symptoms would improve in the presence of appropriate treatment." (Doc. #6, *PageID* #62). None of the Regulations applicable to Dr. Kinkopf's opinions specify that ALJs may consider whether a treating physician discussed the potential for "improvement with appropriate treatment" as a valid reason to place less weight on a treating source's opinions. Even if this is a factor encompassed within the Regulation's "other factors," 20 C.F.R. § 404.1527(c)(6), the ALJ erred by "playing doctor" to the extent he believed that Plaintiff would improve with appropriate treatment. He also played doctor by assuming, without relying on other medical evidence, that the treatment Dr. Kinkopf provided to Plaintiff was not appropriate. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.") (citations omitted).

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.

# V.

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own Regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong

while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of §405(g) due to the problems discussed above. On remand, an ALJ should be directed to evaluate the evidence of record, including Dr. Kinkopf's opinions and the other evidence of record, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings, and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. The Commissioner's non-disability finding is vacated;

2. No finding is made as to whether Plaintiff Jamil Shteiwi was under a "disability" within the meaning of the Social Security Act;

3. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

4. The case is terminated on the Court's docket.

August 25, 2017 *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge